UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

KENNETH F.,[1]

        Plaintiff,

  v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Case No. 6:20-cv-01393-YY

OPINION AND ORDER

YOU, Magistrate Judge.

    Plaintiff Kenneth F. seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33, and Supplemental Security Income ("SSI") disability benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g). For the reasons set forth below, that decision is AFFIRMED.

## STANDARD OF REVIEW

    The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of plaintiff's last name.

1 – OPINION AND ORDER

§ 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since August 3, 2016, the alleged onset date. At step two, the ALJ determined plaintiff suffered from the following severe impairments: traumatic brain injury with behavioral disturbance, post concussive syndrome, mild neurocognitve disorder, unspecified depressive disorder, adjustment

disorder with mixed anxiety and depressed mood, severe cannabis use disorder, speech disorder, scalp neuralgia, and obesity (20 CFR 404.1520(c) and 416.920(c)).

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined he has the "capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, and can stand and/or walk for approximately 4 hours and sit for approximately 6 hours, in an 8-hour workday, with normal breaks. The claimant cannot climb ladders, ropes and scaffold. The claimant cannot balance on elevated surfaces and should have no exposure to extreme cold, moving mechanical parts and high, unprotected place hazards, as rated by the Dictionary of Occupational Titles (DOT). The claimant can understand, remember and carry out simple, routine and repetitive instructions that can be learned in 30 days or less. The claimant can have occasional incidental public contact, but cannot work one-on-one with the public, occasional direct coworker and supervisor interaction and no group tasks. The claimant should perform only low stress work, which is defined as requiring only occasional changes in work setting, occasional changes in work duties, occasional simple, work-related decision-making and no work on a conveyor belt."

At step four, the ALJ found plaintiff was unable to perform any past relevant work. However, considering plaintiff's age, education, work experience, and RFC, the ALJ concluded there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including finisher (hand), electronics worker, and inspector (packer). Thus, the ALJ concluded plaintiff was not disabled.

## DISCUSSION

**I.    Subjective Symptom Testimony**

Plaintiff contends the ALJ erred in discounting his subjective symptom testimony.

When a claimant has medically documented impairments that could reasonably be affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). But Ninth Circuit law "plainly requires" that an ALJ do more than "offer[ ] non-specific conclusions that [the claimant's] testimony [is] inconsistent with [certain evidence]." *Id.* (citations omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc.*

*Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, when coupled with another permissible reason, inconsistencies between a claimant's allegations and objective medical evidence may be used to discount a claimant's testimony. *Tatyana K. v. Berryhill*, No. 3:17-cv-01816-AC, 2019 WL 464965, at *4 (D. Or. Feb. 6, 2019) (citing *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004)).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Here, the ALJ recounted that plaintiff's function report "state[d] that his ability to work is limited by fatigue, anxiety and pain in his head, back, neck and rib area," "[h]is pain limits him to working for no more than 2 hours," and "[h]e is . . . sensitive to changes in barometric pressure." Tr. 19. The ALJ also described plaintiff's hearing testimony that he continued to be limited by fatigue and pain, experienced tremors in his hands and arms and occasional numbness,

5 – OPINION AND ORDER

had difficulty balancing, and took frequent breaks while working. *Id.* The ALJ noted that, with regard to his mental impairments, plaintiff testified that his ability to focus is limited to 15 minutes, he is "emotionally [labile]," and experienced bouts of crying and anger. *Id.*

The ALJ discounted plaintiff's subjective symptom complaints, finding his "statements about the intensity, persistence, and limiting effects of his symptoms . . . are inconsistent because they are not supported by the objective medical evidence or by the claimant's activities of daily living." Tr. 19. With respect to plaintiff's activities of daily living, the ALJ first discussed them in the context of assessing the severity of plaintiff's mental impairments. Specifically, the ALJ found that, "[a]s for adapting or managing oneself, the claimant has experienced a mild limitation," and recounted the activities of daily living from plaintiff's function report. Tr. 18. Later, in the context of discussing plaintiff's "unchanged" MRI results, which contained "no evidence of acute abnormality," the ALJ mentioned that plaintiff worked part time as a line cook, which plaintiff found stressful, and noted that plaintiff's provider "indicated that he would benefit with spending more time in prep cooking rather than on the line." Tr. 21.

An inconsistency with activities of daily living may be used to discount a claimant's testimony. *Molina v. Astrue*, 674 F.3d 1104, 1112-14 (9th Cir. 2012). Here, the ALJ cited to plaintiff's activities of daily living in the context of assessing his mental impairments, but did not explain how they were inconsistent with plaintiff's testimony regarding his physical impairments, except for a passing reference to plaintiff's part-time work[2] as a line cook, which the ALJ recognized was stressful and that plaintiff's provider observed was not beneficial. Otherwise stated, "[w]hile these activities reasonably conflict with [p]laintiff's testimony

---

[2] The ALJ recognized plaintiff's testimony that he worked only "2 days a week for 2-4 hours each workday." Tr. 16; *see also* Tr. 353, 860 (chart notes showing plaintiff worked only "4-5 hours a day twice a week").

6 – OPINION AND ORDER

regarding [his] mental impairments, the ALJ fail[ed] to explain how these activities of daily living are inconsistent with [p]laintiff's testimony" regarding his fatigue and pain, "or meet the threshold for transferrable work skills." *Michele I. v. Comm'r, Soc. Sec. Admin.*, No. 6:20-CV-01982-HZ, 2022 WL 4533962, at *7 (D. Or. Sept. 27, 2022). "Thus, the ALJ erred in rejecting [p]laintiff's subjective symptom testimony . . . as inconsistent with his . . . limited activities of daily living." *Id.*

Another reason the ALJ gave for discounting plaintiff's testimony was that "it was not supported by the objective medical evidence." Tr. 19. But "the Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick*, 157 F.3d at 722. The Commissioner contends the ALJ also relied on conservative treatment to discount plaintiff's testimony. An ALJ "must take 'the claimant's subjective experiences of pain' into account when determining the RFC," *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017), and the ALJ here stated she was relying on plaintiff's "minimal" and "conservative" treatment to "support the limitations found in the . . . RFC." Tr. 22; *see also* Tr. 24 (noting the RFC "is additionally supported by the claimant's current part-time work and conservative treatment"). "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra*, 481 F.3d at 751.

The ALJ observed that plaintiff declined medication for pain, depression, and anxiety, Tr. 20 (citing Ex. 22F/32)[3]; he made significant improvement with speech therapy, was functioning well for day-to-day memory and was within normal limits for conversation, and stopped

---

[3] *See* Tr. 814 ("Discussed potential of Cymbalta for pain and depression anxiety symptoms and patient is not really looking for medication at this time.").

7 – OPINION AND ORDER

attending speech therapy as of July 2019, Tr. 20 (citing Ex. 24F/5)[4]; plaintiff saw improvement with physical and occupational therapy, Tr. 21 (citing 9F/32)[5]; and plaintiff had received maximum chiropractic benefit for his back injury as of April 2017 and was released to return to work with a weekly ramp up to full day work without restrictions, Tr. 21 (citing Exs. 5F, 7F, 8F/4)[6]. The ALJ also noted plaintiff's "lack of treatment since moving to Oregon," observing that although plaintiff "continue[d] to allege difficulties with speech and memory, . . . [he] has not sought further speech or occupational therapy." Tr. 22; *see* Tr. 853-861, 986 (describing treatment "once a month at most"). "While the ALJ's opinion could have more clearly stated each reason and how it served to discount Plaintiff's credibility, the Court is able to 'reasonably discern' the ALJ's path." *Despinis v. Comm'r Soc. Sec. Admin.*, No. 2:16-CV-01373-HZ, 2017 WL 1927926, at *6 (D. Or. May 10, 2017) (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015)); *see also Potter v. Astrue*, No. 6:10–cv–01527–SI, 2012 WL 1071131, at *10 n.5 (D. Or. Mar. 29, 2012) ("As the Ninth Circuit has explained, it is not necessarily reversible error when the ALJ fails to explicitly link his reasons to the rejection of certain evidence, as long as his reasoning is clear from his decision") (citations omitted), *rev'd on other grounds*, 571 F. App'x. 569 (9th Cir. 2014). Because conservative treatment constituted a clear and convincing

---

[4] *See* Tr. 866 ("Plaintiff states that he can tell his memory is getting better . . . Patient is essentially functioning well for day to day working memory. Receptive/expressive speech is WNL for community based situations. Speech intelligibility is WNL at the conversational level.").

[5] *See* Tr. 617 ("[P]atient notes that he has made significant improvements. He has been working with Physical Therapy . . . [and] Occupational Therapy who had recently discharged him.").

[6] *See* Tr. 527 (letter from Dr. Suprenand stating plaintiff "has reached maximum chiropractic benefit for his biomechanical issues, however, [his] post-concussion issues, though improved, have not reached the point of pre-injury status," and opining plaintiff would sustain flare-ups an average of four times per year); Tr. 532 (describing Dr. Weigert's release to work and gradual increase to full time).

8 – OPINION AND ORDER

reason to discount plaintiff's subjective symptom testimony, and it is supported by substantial evidence, the ALJ did not err in this regard.

Plaintiff argues that the ALJ erred because she "ignored" or failed to more specifically identify the details and extent of his debilitating fatigue and pain, which was necessary for her to properly explain what evidence undermined his testimony. Pl. Br. 6-8. "[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

In *Young v. Saul*, the Ninth Circuit rejected the plaintiff's argument that "by failing expressly to mention Young's assertion that his back pain created a need for him to take weeks off from work at a time, the ALJ thereby overlooked that testimony and failed to give reasons to discount it." 845 F. App'x 518, 519 (9th Cir. 2021). The court recognized that "[t]he ALJ specifically cited Young's written statements and testimony as among the items he had 'carefully consider[ed],' and he gave specific reasons why he did not credit Young's claims concerning the 'limiting effects' of Young's symptoms, including his 'back and knee pain.'" *Id.* at 519-20. "The ALJ was not required to mention explicitly, in his ruling, each detail of Young's testimony, such as the need to take off weeks at a time from work." *Id.* at 520 (citing *Lambert*, 980 F.3d at 1277 ("Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony. . . .")). Similarly, in *Cooper v. Kijakazi*, "the ALJ summarized Cooper's relevant testimony concerning her key asserted limitations and stated that he found 'these statements of

extremely limited physical capacity inconsistent with the overall record.'" 2022 WL 1553170, at *1 (9th Cir. May 17, 2022). "The ALJ then explained the specific reasons upon which that conclusion was based." *Id.* The Ninth Circuit affirmed the denial of benefits, finding that, "although Cooper would have preferred a more granular point-by-point refutation of her testimony, '[o]ur cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits.'" *Id.* (quoting *Lambert*, 980 F.3d at 1277).

Here, the ALJ made clear that she was relying on plaintiff's complaints of continuing fatigue and pain that limited his ability to work, as described in his function report and testimony. This identified the testimony the ALJ found was not credible and provided the court with sufficient information to meaningfully determine whether the ALJ's conclusions are supported by substantial evidence.

## II.    Lay Witness Testimony

The ALJ found that "[t]he statements of [plaintiff's] wife . . . (7E) and friend/employer . . . (19E) are not opinions under current Agency regulations"; however, the ALJ stated, "I have read and considered their submissions in conjunction with medical evidence of record." Tr. 23. Plaintiff contends the ALJ erred by failing to provide specific, germane reasons for rejecting the lay witness statement. Pl. Br. 17. But any error, if it exists, is harmless because "the lay witness alleged substantially the same limitations to those alleged by the plaintiff and the ALJ provided valid reasons to reject the plaintiff's testimony." *Dale Z. E. v. Comm'r, Soc. Sec. Admin.*, No. 6:19-CV-00663-AA, 2023 WL 2301577, at *6 (D. Or. Feb. 28, 2023) (citing *Molina*, 674 F.3d at 1122).

**III.    Medical Opinions**

Finally, plaintiff contends the ALJ erred by failing to explain how she applied the consistency factor in assessing the persuasiveness of medical opinions from plaintiff's treating providers, Christopher Wright, PA-C, and Tyson Langeliers, PA-C. Pl. Br. 12-13.

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which

11 – OPINION AND ORDER

a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors.  20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020).  "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020).  However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical."  *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence.  *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

The ALJ found the opinions by PA Wright and PA Langeliers were "not persuasive because the vague limitations offered are not based on objective medical evidence or supported by the claimant's treatment history."  Tr. 22.  The ALJ observed that, "[i]n their statement they

do not identify physical or mental limitations other than stating that claimant would 'likely struggle' with mental and physical stamina working 40 hours, that he needs to lie down an unknown amount and that the claimant would likely be off task 25%." *Id.*

Indeed, the medical opinion statements submitted by PA Wright and PA Langeliers were sparse. PA Wright, who had only been treating plaintiff for four months, left the medical source statement blank except to note, "Recommend to have completed by speech therapy based on previous cognitive testing." Tr. 989. Thus, PA Wright provided no opinion as to any specific limitations. Similarly, PA Langeliers, who had been treating plaintiff for one year, also left critical components of the treating source statement blank, including questions such as how long plaintiff could perform certain tasks in an eight-hour day, how many pounds he could lift and carry, and whether he had limitations in repetitive reaching, handling, or fingering, etc., instead writing that the answer to such questions were "unknown" and needed to "be evaluated and discussed" with plaintiff. Tr. 1151-53. Although PA Langeliers opined that plaintiff would be "off task" 25% or more of the time, he again qualified that statement with the notation "unknown need to be discussed [with] pt." Tr. 1153. In response to the question whether plaintiff would need to take any unscheduled breaks during an 8-hour window," PA Langeliers responded, "unknown need to be evaluated [with] pt. but is likely to need breaks." Tr. 1152. It is unclear whether this means scheduled or unscheduled breaks, and PA Langeliers provided no information as to how often plaintiff would need any unscheduled breaks, how long the breaks would need to be, and what symptoms would cause a need for breaks. *Id*.

As the Commissioner concedes, the ALJ did not use the word "consistent" in evaluating the opinions of PA Wright and PA Langeliers. Arguably, it is hard to explain how something is inconsistent with something that does not exist. Nevertheless, one can easily infer that the ALJ

13 – OPINION AND ORDER

found the opinions of PA Wright and PA Langeliers, which were vague, incomplete, and lacked detail, were not "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Woods*, 32 F.4th at 791–92 (citing 20 C.F.R § 404.1520c(c)(2)).

## ORDER

The Commissioner's decision is AFFIRMED.

DATED March 16, 2023.

                                                /s/ Youlee Yim You
                                                Youlee Yim You
                                                United States Magistrate Judge